STATE OF MAINE                                  SUPERIOR COURT
YORK, SS.                                       CIVIL ACTION
                                                DOCKET NO. CV-12-301
                                                JON—YOR- 11/20/2013

BRUCE MARTON,                           )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )       ORDER
                                        )
NEXTEL COMMUNICATIONS OF                )
THE MID-ATLANTIC, INC.,                 )
                                        )
            Defendants.                 )


      I.    Background

      Plaintiff Bruce Marton leased a communications tower located in Ogunquit, Maine, to

Defendant, Nextel Communications of the Mid-Atlantic, Inc. in April 2005. (Supp. S.M.F. ¶ 4.)

During that same year, the Sprint Corporation merged with the Nextel Corporation and took the

name "Sprint Nextel Corporation." (Supp. S.M.F. ¶ 2.) Defendant is a fully owned subsidiary of

the Sprint Nextel Corporation. (Supp. S.M.F. ¶ 3.) The initial lease term was ten years. Nextel

installed equipment on the premises and leased the premises for over seven years pursuant to the

lease agreement. (Supp. S.M.F. ¶ 7.)

      On August 8, 2012, Defendant sent notice by letter of its intent to terminate the lease

effective November 30, 2012, pursuant to Section 10 of the Lease agreement. (Supp. S.M.F. ¶

12.) Defendant claimed to be terminating the agreement in light of the outdated technology used

by the tower and signal interference between it and a tower operated by Nextel Affiliates. (Supp.

S.M.F. ¶¶ 8, 11, 12.) A tower operated by Sprint was also leased from Marton and is between

100 and 125 feet away from the tower in question. (Add. S.M.F. ¶¶ 19, 20.) The Sprint Tower

had the most updated technology, whereas the tower in question used technology that did not

1

permit the transmission of data. (Supp. S.M.F. ¶ 9.) Furthermore, the use of the tower in question interfered with the recently updated technology of the Sprint Tower. (Supp. S.M.F. ¶ 11.) Plaintiffs have brought this action for breach of contract. Defendants have counterclaimed for declaratory judgment of its rights pursuant to paragraph 10(v) of the lease agreement. Defendant has moved for summary judgment on both Plaintiff's action and Defendant's counterclaim. Plaintiff has brought a cross motion for summary judgment on the issue of liability.

II.    Standard of Review

Summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Beal v. Allstate Ins. Co., 989 A. 2d 733, 738 (Me. 2010); Dyer v. Department of Transportation, 951 A.2d 821, 825 (Me. 2008). When reviewing a motion for summary judgment, the court reviews the parties' statements of material facts and the cited record evidence in the light most favorable to the non-moving party. Id. A genuine issue of material fact exists where the fact finder must make a determination between differing versions of the truth. Reliance National Indemnity v. Knowles Industrial Services Corp., 2005 ME 29, ¶7, 868 A.2d 220; citing Univ. of Me. Found. V. Fleet Bank of Me., 2003 ME 20, ¶20, 817 A.2d 871. Furthermore, "a fact is material if it could potentially affect the outcome of the case." Id.

"When contract language is ambiguous or uncertain, its interpretation is a question of fact to be determined by the factfinder, but when the language is clear, it is a question of law and can be resolved by the court." F.O. Bailey Co., Inc. v. Ledgewood, Inc., 603 A.2d 466, 468 (Me. 1992) (citations omitted.)

III.    Discussion

2

Plaintiff has brought this action for breach of the lease agreement arguing that Defendant has not properly terminated the lease. Section 10(v) of the lease agreement states:

> Termination. This Agreement may be terminated without further liability on thirty (30) days prior written notice as follows: ... (iv) by Tenant if Tenant determines that the Premises are not appropriate for its operation for economic or technological reasons, including, without limitation, signal interference ...

(Communications Site Lease Agreement, Section 10.) Plaintiff contends Section 10(v) of the Lease does not permit Defendant to terminate the lease based upon economic or technological factors controlled by Defendant. Plaintiff argues that there must be some deficiency outside of Defendant's control that renders the premises inappropriate for operation for economic or technological reasons in order for Defendant to terminate the lease on the basis of this section. Plaintiff cites to Top of the Track Association v. Lewiston Raceways, for this proposition. Top of the Track Associates v. Lewiston Raceways, Inc., 654 A.2d 1293 (Me. 1995). In Top of the Track, Top of the Track Associates contracted with Lewiston Raceways to construct and operate restaurant facilities in the clubhouse of the track. Id. at 1294. After a few years, and after extending the term of the lease, Lewiston Raceway stopped operating as a raceway without any warning to Top of the Track Association. Id. Top of the Track Association sued for breach of contract. Id. In that case, the Law Court held that there is an implied covenant "that neither party shall by its unilateral action destroy or injure the right of the other party to receive the fruits or benefits of the contract or render performance impossible. Id. at 1296. Plaintiff argues that Defendant has similarly deprived Plaintiff of the benefits of the contract. Plaintiff argues that Defendant is equally able to update and operate the Nextel Tower as the Sprint Nextel Corporation was able to update and operate the Sprint Tower. For that reason, it was the business choice of the Sprint Nextel Corporation, not economic or technological reasons

3

outside of the control of Defendant, which caused Defendant to ask to terminate the lease agreement.

In this case, a plain reading of the lease agreement reveals that the tenant may determine that the premises are inappropriate for its operation for economic or technological reasons. Defendant, tenant, determined that the tower was no longer appropriate for its needs because of the demand for the newer CDMA, EVDO, WiMax, LTE and Network Vision technologies rather than the iDEN technology used on the tower. Updating the tower to incorporate the new technology would be costly. The changing demand for data transmitting technology is an economic and technological reason to terminate the lease. Furthermore, Defendant has determined that use of the Nextel Tower interferes with the signal of the Sprint Tower. Section 10(v) of the lease agreement specifically allowed for Defendant to terminate the lease on the basis of signal interference.

This case is distinct from Top of the Track because in this case there is a specific termination clause in the lease agreement which permits termination of the agreement in a situation just like the one at hand. Because the parties agreed to the term, and a plain reading of the term allows Defendant to terminate the agreement upon its determination that there are economic or technological reasons the premises are no longer appropriate, the court will uphold the term.

IV.    Conclusion

Defendant's Motion for Summary Judgment on the Complaint and on Defendant's Counterclaim for Declaratory Judgment is Granted.

Plaintiff's Motion for Summary Judgment on the Issue of Liability is Denied.

DATE:        11/20/13                    _____

                                        John O'Neil, Jr.
                                        Justice, Superior Court

4

ATTORNEY FOR PLAINTIFF;
BRADFORD A PATTERSHALL
PETRUCCELLI MARTIN & HADDOW LLP
PO BOX 17555
PORTLAND ME  04112-8555


ATTORNEY FOR DEFENDANT:
NICHOLAS H WALSH
PO BOX 7206
PORTLAND ME  04112-7203