STATE OF MAINE                                    SUPERIOR COURT
                                                  CIVIL ACTION
KENNEBEC, ss.                                     DOCKET NO. CV-02-237

                                                  ʃHi ⁣    ⁣  ⁣ /05

WANITA FROST,

            Plaintiff

      v.                                          **DECISION AND ORDER**

STATE OF MAINE,
DEPARTMENT OF
TRANSPORTATION,

            Defendant


      This matter is before the court on defendant's motion for partial summary

judgment (defendant's first motion); plaintiff's motion for partial summary judgment;

defendant's motion for partial summary judgment (defendant's second motion); all

pursuant to M.R. Civ. P. 56.

      The present action arises primarily under the Maine Human Rights Act,

5 M.R.S.A. § 4551 *et seq.*, alleging gender-based discrimination, hostile working

environment, and retaliation. Plaintiff Wanita Frost ("plaintiff" or "Frost") also asserts

a separate count in her complaint alleging breach of contract.

      Frost began working for defendant Maine Department of Transportation

("defendant" or "MDOT") as a light equipment technician in 1994. Later that same

year, the plaintiff was re-assigned to work as a heavy equipment technician. In

September of 1998, Frost filed a complaint with the Maine Human Rights Commission

("MHRC"). In her complaint, the plaintiff alleged that she was the subject of unlawful

gender-based discrimination in the terms and conditions of her employment, and that

she was subject to a hostile and inappropriate working environment. On October 21,

1999, MDOT and Frost entered into a written Settlement Agreement ("the Agreement")

under which the defendant conceded that Frost had indeed been subjected to unlawful discrimination because of her sex, as described in the MHRC complaint. The Agreement also provided a mechanism to address future perceived inequities, and required MDOT management to take prompt and appropriate action. In addition, the parties contemplated that both State and Federal Courts, as well as the MHRC, would play a role in addressing further disputes that should arise implicating the terms of settlement.

On January 8, 2001, the plaintiff filed a second complaint with the MHRC alleging continued unlawful gender discrimination and retaliation for having filed her initial MHRC complaint. Unlike the first charge, however, this subsequent action was dismissed by the Commission on September 24, 2001.

Frost filed the present action on November 13, 2002.[1] The defendant filed its first motion for partial summary judgment on March 9, 2004.

The plaintiff filed her motion for partial summary judgment on April 8, 2004. The defendant filed its opposition on May 3, 2004, four days late. Frost timely filed her reply on June 14, 2004 in accordance with a court-ordered extension.

---

[1] The plaintiff subsequently filed two amended complaints. The second amended complaint, which was filed on December 16, 2003, is in five counts. Count I asserts a claim for hostile work environment based on gender under the MHRA; count II claims retaliation under the MHRA in that MDOT failed to protect her from harassment when she returned to work following settlement of her original MHRC charge; count III claims retaliation under the MHRA in that she was denied a supervisory position for which she was qualified; count IV sounds in unlawful gender discrimination under the MHRA relative to being denied the supervisory position; and count V alleges breach of contract for MDOT's failure to advise her of actions taken in response to her post-settlement agreement complaints, as required under the terms of the Agreement.

The court notes MDOT's assertion that it was never served with the initial complaint, and hence, its insistence that January 23, 2003, the day Frost filed the first amended complaint, is the operative date for statute of limitations purposes. Whether the court relies on November 13, 2002, the unserved complaint, or January 23, 2003, the served complaint, the complained of activities extending into the Spring and Summer of 2001 clearly fall within the statutory limitation of 5 M.R.S.A. § 4613(2)(C).

MDOT filed its second motion for partial summary judgment on April 8, 2004. After receiving an extension, the plaintiff timely filed her opposition on May 28, 2004. The defendant filed its reply on June 11, 2004, seven days late.

The Law Court has explained that:

> Summary judgment is no longer an extreme remedy. It is simply a procedural device for obtaining judicial resolution of those matters that may be decided without fact-finding. Summary judgment is properly granted if the facts are not in dispute or, if the defendant has moved for summary judgment, the evidence favoring the plaintiff is insufficient to support a verdict for the plaintiff as a matter of law.

*Curtis v. Porter*, 2001 ME 158, ¶ 7, 784 A.2d 18, 21-22. Summary judgment is proper if the citations to the record found in the parties' Rule 56(h) statements demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *See Dickinson v. Clark*, 2001 ME 49, ¶ 4, 767 A.2d 303, 305. The party opposing summary judgment will be given the benefit of any reasonable inferences that can be drawn from the presented facts. *See Perkins v. Blake*, 2004 ME 86, ¶ 7, 853 A.2d 752, 755. "A fact is material if it has the potential to affect the outcome of the case under governing law." *Levine v. R.B.K. Caly Corp.*, 2001 ME 77, ¶ 4, n.3, 770 A.2d 653, 655, n.3 (citing *Burdzel v. Sobus*, 2000 ME 84, ¶ 6, 750 A.2d 573, 575). "The invocation of the summary judgment procedure does not permit the court to decide an issue of fact, but only to determine whether a genuine issue of fact exists. The court cannot decide an issue of fact no matter how improbable seem the opposing party's chances of prevailing at trial". *Searles v. Trustees of St. Joseph's College*, 1997 ME 128, ¶ 6, 695 A.2d 1206, 1209 (quoting *Tallwood Land & Dev. Co. v. Botka*, 352 A.2d 753, 755 (Me. 1976)). To avoid a judgment as a matter of law for a defendant, a plaintiff must establish a *prima facie* case for each element of her cause of action. *See Fleming v. Gardner*, 658 A.2d 1074, 1076 (Me. 1995).

**Defendant's First Motion**

In the defendant's first motion, MDOT does not address the substance of plaintiff's claims, but rather, it presents arguments that go to what it considers procedural issues. In particular, the defendant argues that (1) certain of the plaintiff's claims are outside of the MHRA statute of limitations; (2) Frost seeks civil penal and punitive damages that are not available to her by law; (3) Frost has failed to exhaust administrative avenues of relief and is thus not entitled to certain remedies, including a jury trial, damages, and attorney's fees; (4) Frost's signing of the Agreement terminates her right to bring suit based on events occurring prior thereto; and (5) no civil penal damages are available under the Agreement because the MHRC has not determined that MDOT committed a breach.

One of the main points in issue concerns whether this court should adopt certain of the holdings espoused in *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101 (2002). Similar to the present case, *Morgan* involved claims of discrimination, hostile working environment, and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, which is the federal analogue to the MHRA. In this context, the *Morgan* Court discussed several potentially relevant points, not the least of which is the difference between violations occasioned by discrete versus continuing conduct. The Court explained that discrete acts, cited examples of which include termination, failure to promote, and similar actions it deemed "easy to identify", "are not actionable if time barred, even when they are related to acts alleged in timely filed charges". *Morgan*, 536 U.S. at 113. The Court did state, however, that an untimely, and thus non-actionable event may still be used by a complaining employee as background evidence in support of a timely discrete claim. *See id.*

On the other hand, the Court recognized that hostile work environment claims involve a series of separate acts that together constitute the unlawful employment practice. Further, the Court explained that all of the circumstances must be considered when evaluating a hostile work environment claim, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance". *Id.* at 116 (citations omitted). Importantly, the Court also noted that as long as "an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability". *Id.* at 117. Thus, under *Morgan*, we see that in cases of both discrete and continuing acts, circumstances exist where a complainant may set forth otherwise untimely events, some as the basis of liability, and others merely as "background evidence".

The court chooses to accept the *Morgan* analysis. It must also evaluate the impact of the Agreement upon the scope of factual allegations that may be considered in support of the complaint. In the defendant's view, the Agreement, and particularly paragraphs 3, 7, and 9 thereof, restrict the plaintiff's right to pursue legal recourse for events occurring prior to October 21, 1999. MDOT points out that the Agreement purported to resolve not only claims based upon enumerated issues, but all claims and issues that "might have been alleged."

The facts alleged:

1993-94, Frost applies for full time work at the MDOT; learns from secretary of the Director of Motor Transport in Augusta that her application had been marked, "unqualified" and "female," which had been written in big, red letters on Frost's application.

March 10, 1994, Frost was hired, and was the only female mechanic employed by MDOT throughout her tenure there.

1997, Director Wieczorek overheard saying he had to give female welder trainee a test "because she might blow the place up."

September 1994, Frost ends six months probation period as light mechanic and transferred to heavy mechanic floor. Her new supervisor, Rolfe, requested that she be put on additional six months probation. There is no MDOT policy to increase probation when switching between departments. Frost complained about extra probation, and was supposed to be re-evaluated after three months.

In December 1994 she was evaluated and probation extended another three months.

Spring 1995, supervisor Rolfe recommends terminating Frost after second six-month probation period. The director of Human Resources reversed the termination due in part to her belief that Frost had been treated unfairly. Rolfe has persisted in complaining over the years that he should have been able to terminate Frost. Frost never received written confirmation, per agency policy, that she successfully completed her probation period.

September 1994-May 1998, hostile work environment, including:

- Rolfe scrutinizing Frost's work more closely than others;

- Rolfe requiring that Frost return from work breaks early;

- refusing to allow others to help Frost in her work;

- refusing to replace missing tools when Frost reported them missing;

- in 1995 evaluation, Rolfe said Frost caused friction among co-workers;

- Frost complained about harassment from Robert Guyon to Rolfe many times;

- Guyon often in Frost's work area unnecessarily;

- Frost yelled at Guyon to stay away from her;

- Guyon called Frost "bitch" and "cunt";

- Frost complained that Guyon called her at home and was bothering her;

- Guyon asked Frost if her co-worker, Brann, "was any good fucking";

- Frost complained that Guyon had loosened the lug nuts on her car;

- October 1994, another co-worker threw a plate at Frost;

- July 1995, another co-worker told Frost "that if she kept her legs shut, things would not have occurred the way they did";

- August 1995, another co-worker tells Guyon that he had gotten Frost horny for Guyon;

- August 1995, Guyon says to Frost that she better watch out who she cried to when she complained about Guyon to MDOT;

- September 1995, colleagues refuse to work with Frost when they hear she is thinking of filing a sexual harassment suit.

May 1998, Frost suffered a work related injury (right hand crushed) and out of work for a week; injury restricted her work to light duty, office type work.

September 8, 1998, files complaint with MHRC.

November 1998, allowed to return to heavy mechanic work by her physician, but MDOT did not return her to that position for another year, after the Agreement. Usual MDOT policy is to return an employee to former work if there is medical clearance to do so.

October 21, 1999, Settlement Agreement:

- Guyon present at Agreement and told its terms were to be kept confidential.

Post-Agreement, hostile work environment continues, including:

- Rolfe telling crew that things weren't going to change for Frost;

- October 22, 1999, Frost makes verbal complaint that Guyon breached confidentiality by talking to co-workers about settlement; complains in writing three days later;

- October 25, 1999, Guyon receives written reprimand, but Frost not informed, per the Agreement; she never was told until October 9, 2003, via litigation documents as a result of discovery requests;

- November 1, 1999, first day back at work, nude photo of female under visor of truck Frost assigned to work on; Frost told presence of photo was a "sick coincidence";

- employee who owned photo counseled about inappropriateness of it, but Frost never so informed;

- also on November 1, 1999, Frost found 11 notes in her tool box which said "I love you";

- also on first day back, Frost complained that Guyon was spending too much time in her work area;

- November 9, 1999, Frost complains that Guyon was calling her at home;

- November 9, 1999, co-worker reported that several months earlier, he was asked to tell Frost that Guyon loved her;

- November 22, 1999, Frost finds a sticker in a bathroom that says "I'm a bad boy";

- December 13, 1999, Frost complains that two co-workers had attempted to run into her car;

- also in December 1999, Frost complains that workers isolating her, not taking smoking breaks with her and not talking to her at the parts counter;

- December 16, 1999, settlement check delivered to Frost's home, instead of to her attorney, thus tipping off co-workers that she had been paid a settlement;[2]

- December 22, 1999, more complaints about Guyon spending too much time in Frost's work area;

- February 2000, Frost's replacement supervisor refused to take her call, thus preventing her from doing her job by ordering necessary parts;

- February 1, 2000, Frost complains in writing about Guyon spending too much time in her area on repeated occasions;

- February 2, 2000, Guyon placed on administrative leave; he was ultimately suspended for one week, paid; Frost not informed of discipline of Guyon, per the Agreement.

July-November 2000 Rock Incidents:

- July 10, 2000, rock thrown into the bed of a truck being serviced by Frost;

- August 17, 2000 two rocks discovered near Frost's work bay;

- August 18, 2000, Frost overhears unidentified co-worker say, "If it had been me, it wouldn't have been rocks, it would have been fists";

- August 23, 2000, five to eight rocks neatly piled in a triangular fashion at the top of staircase regularly used by Frost;

---

[2] Plaintiff's statement of material facts asserts that on December 16, 1999, Ms. Dority and Mr. Marston went to the plaintiff's home to deliver the settlement check. At the time, the plaintiff was represented by counsel and she never gave instructions that the check should be delivered to her personally. She said that as a result of the delivery to her home, coworkers learned and indicated to her that they knew she had been paid a settlement. Plaintiff goes on to say that on December 26, 1999, she filed a written complaint to Marston about the delivery of the check and it not being kept confidential. She alleges that MDOT did not respond to this complaint.

- November 17, 2000, rock located in area where Frost usually took her cigarette break; the area had just been repaved and cleared.

January 8, 2001, Frost files second complaint with MHRC, which is dismissed.

May-June 2001, hostile work environment continues:

- May 22, 2001, Guyon asks co-worker to tell Frost that Guyon is "sweet on her and wants her back";

- June 1, 2001, while on her lunch break, Guyon attempts to run into her vehicle while she is stopped at a traffic light;

- June 6, 2001, Frost obtains a temporary restraining order against Guyon; upon being served, Guyon told co-workers, "When I come in with a gun and go upstairs and blow her brains out, you will know why";

- June 7, 2001, Frost removed from Motor Transport building in response to Guyon's threat; Guyon placed on paid administrative leave;

- June 28, 2001, Guyon terminated.

August 23, 2000-June 2001, Frost on light duty due to shoulder injury, despite having medical clearance to return to heavy equipment work in January 2001.

May 13, 2002, Frost applies for supervisory position.

2003, hostile work environment continues:

- February 21, 2003, Frost using unisex bathroom when co-worker starts kicking outside of bathroom door;

- co-worker found to have pornographic magazines at work site;

- bumper sticker found on MDOT site referencing a "stiff rod."

The behaviors involving co-worker Guyon certainly occurred before and after the Agreement. Indeed he seems to be the lead perpetrator in terms of harassing Frost. His bothersome actions began in 1995 if not earlier, and continued until his termination

in June 2001, almost two years after the Agreement. The claim of hostile work environment thus has some merit focusing on Guyon's actions toward Frost alone. His poor behavior toward Frost could be seen to constitute a series of separate acts that taken together over time, create a hostile work environment. Even were the court not to consider Guyon's pre-Agreement harassment of Frost, he continued to harass her for almost two years after the Agreement, behavior that ultimately led to his termination.

The defendant asserts that enforcement of the Agreement's terms is dependent upon the MHRC's initial determination that the Agreement has been violated. Also, in light of *Morgan*, MDOT considers the Agreement to be an "intervening action" that serves to cut off admissibility of pre-Agreement events. *See id.* at 118.

To the contrary, the plaintiff argues that this court is indeed empowered to determine whether the Agreement was breached and that the Agreement does not vest the MHRC with exclusive and final jurisdiction in this regard. In support of her position, Frost cites to the first paragraph of the Agreement, which states in part, "Ms. Frost has the right to seek to enforce its terms and conditions in State or Federal Court, and that if said Court should find that Respondent has violated this Agreement, the Court shall find...". The plaintiff believes that this provision clearly shows the parties' intention that the Court, in addition to the MHRC, retain the ability to determine whether the Agreement was breached.

According to the Maine Human Rights Act (MHRA), 5 M.R.S.A. § 4614, the court may award the prevailing party reasonable attorneys' fees and costs. In addition, the MHRA provides for compensatory and punitive damages in a civil action only if the plaintiff alleges and establishes that prior to the filing of such civil action, the plaintiff first filed a complaint with the commission and the commission either:

A. Dismissed the case under section 4612, subsection 2;

B. Failed, within 90 days after finding reasonable grounds to believe that unlawful discrimination occurred, to enter into a conciliation agreement to which the plaintiff was a party;

C. Issued a right-to-sue letter under section 4612, subsection 6 and the action was brought by the aggrieved person not more than 2 years after the act of unlawful discrimination of which the complaint was made as provided in section 4613, subsection 2, paragraph C; or

D. Dismissed the case in error.

5 M.R.S.A. § 4622.

Most relevant to this case is paragraph A above, referencing § 4612(2). That section of the statute states, "If the commission does not find reasonable grounds to believe that unlawful discrimination has occurred, it shall enter an order so finding, and dismiss the proceeding." 5 M.R.S.A. § 4612(2) (2004). That happened when Frost filed her second complaint with the Maine Human Rights Commission, on January 8, 2001.[3] The following September 24, 2001, the MHRC dismissed that second complaint in its entirety. Such a dismissal would seem to be covered by § 4614(A) above, indicating that Frost was able to pursue a civil action, as long as she alleges and establishes that prior to doing so, she filed a complaint with the MHRC. By validly pursuing a civil action, Frost would then be entitled to compensatory and punitive damages.

The defendant interprets the situation and the statute differently. In its motion for partial summary judgment, defendant argues that "without a finding by the MHRC that the Agreement has been breached, there is no sanction or remedy in that Agreement to enforce against MaineDOT." Under the MHRA, a plaintiff is entitled to pursue a civil action if the MHRC dismisses its complaint. There is nothing in the

---

[3] The January 2001 complaint to the MHRC described the "rock" incidents and the "I love you" notes incident, so called post-settlement agreement occurrences.

MHRA that compels the MHRC to determine whether or not the Agreement had been breached as a prerequisite for Frost filing a claim in Superior Court under the MHRA.

Defendant also points to another section of the MHRA that governs the awarding of punitive and compensatory damages, indicating that a plaintiff can only recover under the Maine law if she is unable to do so under the appropriate federal law, 42 U.S.C. § 1981 (1994). *See* 5 M.S.R.A. § 4613(2)(B)(8)(a). The 1994 version of 42 U.S.C. § 1981 is identical to the current version and governs "freedom to contract." However, the federal law relates to freedom from racial discrimination in the private contracting context, and makes no reference to gender discrimination. *See Ridge v. Cape Elizabeth Sch. Dep't*, 77 F. Supp. 2d 149, 167 (D. Me. 1999) ("It is well recognized that 42 U.S.C. § 1981 forbids racial discrimination in the making and enforcement of private contracts."). Thus Maine's Human Rights statute may be more properly read to indicate that a plaintiff asserting a racial discrimination charge under Maine law must first be unable to recover under the federal analogue to the MHRA. Frost, however, is claiming gender-based discrimination, and thus 42 U.S.C. § 1981 is not implicated. The defendant's invocation of the federal statute is thus inapposite to the case before us.

While not directly related to suit under the MHRA, defendant argues further that the Maine Tort Claims Act bars Frost's recovery of punitive damages from the MDOT. *See* 14 M.R.S.A. § 8103 (2005). The Maine Tort Claims Act bars recovery against governmental entities, which includes the MDOT. As plaintiff's second amended complaint is against the State of Maine, Department of Transportation, and does not name any of its employees as individual defendants, defendant argues that Frost's claim for damages is frustrated on classic "governmental immunity from suit" grounds.

The Maine Tort Claims Act modifies the scope of governmental immunity enjoyed by the sovereign from claims of *tort* (emphasis supplied). Plaintiff's claims in

this matter are for breach of contract and statutory violations specifically providing civil relief. 5 M.R.S.A. § 4553(4) of the Maine Human Rights Act defines an employer as any person employing any number of employees and § 4553(7) provides that "person" includes "the State and all agencies thereof." Clearly, there is no basis for consideration of the Maine Tort Claims Act within the operable complaint pending in this case.

With regard to the issue of exhaustion of administrative remedies as it applies to the contents of plaintiff's second claim before the MHRC, this court chooses to follow the "scope of the investigation test" (. . ., Title VII does not say explicitly that the court suit must be limited to just what was alleged in the agency complaint. And the courts, while assuming that some kind of a relationship must exist, have sometimes allowed court claims that go beyond the claim or claims made to the agency, and sometimes not.) *Clockedile v. New Hampshire Dept. of Corrections*, 245 F.3d 1, *infra*.

**Plaintiff's Motion**

The plaintiff's motion focuses solely on count V of her second amended complaint, which alleges that MDOT breached the Agreement entered into by the parties. In particular, Frost claims that the defendant breached the Agreement by failing to inform her of the outcome of complaints she raised after the Agreement went into effect and what steps it took to resolve those concerns.

She asserts that the language of the Agreement unambiguously required the defendant to keep her informed of the outcome of her complaints and of what it did to resolve the issues raised. Frost asks that the court conclude as a matter of law that MDOT breached the Agreement, and leave to the jury the factual questions of whether the breach was material and what damages were caused as a result.

In support of her breach of contract claim, the plaintiff cites to a litany of complaints improperly handled by MDOT in the period immediately following the

execution of the Agreement, extending all the way through mid-2001. Among the issues raised in her brief are that: (1) MDOT failed to inform Frost of a written warning issued to a co-worker, Robert Guyon[4] ("Guyon"), for violating the confidentiality provision of the Agreement by disclosing its terms to other MDOT employees; (2) MDOT failed to inform plaintiff of verbal counseling given to a MDOT truck driver with regard to the Department's sexual harassment policy after Frost found a nude photo of a woman in his truck while servicing it; (3) MDOT failed to inform plaintiff as to the conclusiveness of a handwriting analysis performed on eleven notes proclaiming "I LOVE YOU" that were placed in her toolbox; (4) MDOT failed to notify plaintiff of a written warning issued to Guyon after she complained that he was unnecessarily spending time in her work area; (5) MDOT failed to investigate or take other action on her complaint that Guyon attempted to run into her vehicle while she was on the way to work one morning; (6) MDOT failed to investigate or take action when Guyon again attempted to run into her car, this time while Frost was on her lunch break; among numerous other allegations.

In opposition, the defendant sets forth several defenses, including that (1) Frost formerly testified that she did not believe certain acts were violative of the Agreement, and therefore she is precluded from now using them as a basis for liability on count V; (2) informing Frost of actions that it did take would have, in some cases, violated the privacy protections of 5 M.R.S.A. §7070; (3) MDOT had no responsibility to respond to complaints stemming from alleged incidents occurring outside of the workplace; and (4) plaintiff had an obligation to have claims that the Agreement was breached heard and decided by the MHRC.

---

[4] With regard to most of Frost's complaints, Guyon is either the chief perpetrator, or, if the perpetrator is unknown, the chief suspect.

Defendant alleges that the plaintiff disavowed any claim that the failure to notify her of corrective action was a violation of the Agreement. Frost was deposed twice, on October 9, 2003 and November 11, 2003. A review of the 261 pages of both depositions, with one exception, does not find any instance of Frost indicating that lack of informing her of follow-up to her complaints was not a violation of the Agreement. The exception is a response to a precise question, "To the extent that [providing Frost with information on the handwriting analysis] wasn't done, in your opinion would that be a violation of the Settlement Agreement language?" Frost responded, "No." Clearly the weight of Frost's deposition testimony is that MDOT's lack of informing her of their complaint follow-up was experienced as detrimental by her and a violation of the Agreement.

Proof of former testimony of the plaintiff clearly goes to the weight and credibility of plaintiff's position in this matter but does not estop the plaintiff from alleging the contract breach. Secondly, if there were circumstances wherein the defendant could not notify the plaintiff of actions taken in response to her complaint because it would violate the privacy protections of 5 M.R.S.A. § 7070, the Agreement should have recognized that limitation.[5] While the court agrees that the defendant can have no responsibility to respond to complaints stemming from alleged incidents occurring outside of the workplace, to the extent the defendant was aware of such alleged incidents, failure to consider them as background to workplace relationships may be considered by the jury in context. This court is not aware of any basis upon

---

[5] In addition to an obligation on the part of the defendant to cause the Settlement Agreement to recognize the limitations in law to disclosing the outcome of complaints where personal disciplinary actions are taken, there is no evidence presented to suggest that the defendant advised the plaintiff that actions were taken which were subject to the confidentiality provision.

which the MHRC would make a determination based upon allegations of breach of contract.

In reply, the plaintiff asserts that MDOT did indeed have an obligation to respond to her complaints of harassment arising from off-premises harassment. *See Crowley v. L.L. Bean*, 303 F.3d 387, 395 (1st Cir. 2002); *O'Rourke v. City of Providence*, 235 F.3d 713, 730 (1st Cir. 2001). Frost also asserts, contrary to the defendant's suggestion, that once a disciplinary decision becomes final, the written decision relating to that action is no longer confidential. *See* 5 M.R.S.A. § 7070(2)(E); *Doe v. Dept. of Mental Health, Mental Retardation, and Substance Abuse Services*, 1997 ME 195, ¶¶ 8-10, 699 A.2d 422, 424-425. Also, Frost notes that the MHRC's jurisdictional authority is defined by statute, and does not include deciding breach of contract claims. *See* 5 M.R.S.A. § 4552. Moreover, she contends that, to the extent the court finds that the Agreement confers authority on the MHRC to decide such disputes, the language must be rejected as against public policy. In particular, she asserts that such a reading of the Agreement would impermissibly restrict her ability to enforce rights granted under the MHRA. *See, e.g., Greenvall v. Maine Mutual Fire Ins. Co.*, 1998 ME 204, ¶ 10, 715 A.2d 949, 953. Finally, to the extent that she was required to exhaust her administrative remedies, Frost claims that she has. Specifically, she cites to her January 8, 2001 MHRC complaint in which she outlined gender-based hostile work environment and retaliation claims arising subsequent to executing the Agreement. Based upon the averments before the commission, she contends that a breach of contract claim could "reasonably be expected to grow out of" the charge that she was the subject of continuing unlawful employment actions. *See Chaloult v. Interstate Brands Corp.*, 2003 U.S. Dist. LEXIS 13602, *69 (D. Me. 2003) (First Circuit follows the "scope of the investigation test" in employment discrimination cases).

As plaintiff's motion for partial summary judgment states, the plaintiff bears the burden of proof in establishing (1) a breach of material contract terms; (2) causation; and (3) damages. *See* plaintiff's partial motion for summary judgment, at 16 (quoting *Maine Energy Recovery Co. v. United Steel Structures, Inc.*, 1999 ME 31, ¶7, 724 A.2D 1248, 1250). But the plaintiff seems only to address the first prong of the claim, the breach of contract, in her motion. Indeed the argument is a classic case of their being "an A without a B"—the motion contains a subheading labeled "A. The MDOT Failed To Comply With Several Provisions Of The Settlement Agreement And Its Failure To Do So Constitutes A Breach" but does not include additional sections describing "B. Causation" and "C. Damages."

The lack of additional sections is more than a semantic quibble with the motion, but has legal ramifications. The motion specifically says "whether these breaches are material and caused Plaintiff damages is a question of fact to be decided by the jury." The motion then specifically *does not* make out a *prima facie* case for breach of a contract claim, in direct opposition to what the plaintiff herself states is required to sustain her motion of partial summary judgment. The motion does state that the failure of MDOT to "inform Ms. Frost of the outcome of her various complaints…caused Ms. Frost to be subjected to ongoing discrimination and retaliatory conduct." There is thus some attempt at outlining how the breach caused Frost harm, but again, damages are left unstated.

Plaintiff salvages her breach of contract claim when, in the plaintiff's opposition to defendant's motion for partial summary judgment, she states that she is entitled to at least $25,000 for a material violation of the Agreement. The Agreement thus contemplates that in addition to the settlement payment of $15,000 Frost received under it, any further violations could also result in additional payments of at least $25,000. *See*

*id.* Plaintiff further clarifies that her damages request is for the $25,000 contemplated in the Agreement and is not dependent on the breach of contract claim being heard by the MHRA. *See id.* at 20.

Defendant, in its memorandum at p. 15, states, "We agree with plaintiff, *see* plaintiff's motion for partial summary judgment at 19, that 'whether these breaches are material and cause plaintiff damages is a question of fact to be decided by the jury.'" Under those circumstances, it is undisputed that the defendant has breached its Agreement with the plaintiff but whether the breaches are material remains for the factfinder. The court disagrees that the issue of damages is left to the jury inasmuch as the parties have stipulated by a provision in the Agreement as to liquidated damages, most particularly, ". . . if said Court should find that Respondent has violated this Agreement, the Court shall find any such violation as a second civil violation and impose a civil penalty in the amount as set by statute, to be not less than $25,000." Accordingly, if the jury should determine that the agreed-upon breaches or breaches to be found under genuine issues of disputable facts are material, a civil penalty not less than $25,000 must be imposed.[6]

The court finds as a fact that the defendant has breached its contract with plaintiff as required in the Agreement. The court further finds as a fact that the parties have contracted liquidated damages in the event of that breach. Therefore, plaintiff is not required to prove either of those matters of fact. With regard to whether or not the found breaches are material and whether or not there are other breaches established by a preponderance, remain jury questions and therefore prevent the court from providing summary judgment to plaintiff on count V of her second amended complaint.

---

[6] Note, this is a matter of liquidated damages under contract law and not the limitation of penalty as provided by the MHRA. *See* 5 M.R.S.A. § 4613(2)(B)(7).

## Defendant's Second Motion

In this motion, the defendant focuses on the substance of the arguments it anticipates will be made by the plaintiff in support of her complaint. MDOT's first point is that Frost has not shown that any of her properly raised claims are related to her sex. Hence, MDOT suggests that the plaintiff has failed to make out her *prima facie* case under the MHRA. MDOT also asserts that it has produced legitimate, nondiscriminatory reasons for certain events, and that, in various cases, it is entitled to the so-called *Faragher/Ellerth* affirmative defense. *See Faragher v. City of Boca Raton*, 524 U.S. 775 (1998); *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742 (1998). The defendant also contends that the actions complained of by the plaintiff are merely isolated events that cannot legally comprise a hostile work environment.

With regard to MDOT's failure to promote Frost to a supervisory position, the defendant asserts that Frost has not made out a *prima facie* case of retaliation in at least two respects: (1) she has not shown that she was objectively qualified for the position; and (2) she has shown no connection between the decision not to promote and her having brought a prior charge of harassment. With regard to the discrimination claim that is also based on her non-promotion, MODT asserts that Frost must show she is qualified for the job sought as part of her *prima facie* claim, and she has failed to do so. *See Doyle v. Dept. of Human Services*, 2003 ME 61 ¶ 14, 824 A.2d 48, 54.

Defendant's statement of material facts in support of its second motion for summary judgment provides many factual details in support of its position that the plaintiff did not demonstrate that she was objectively qualified for the supervisor job; however, the plaintiff's statement of material facts in opposition to defendant's motion for summary judgment charges bias on behalf of the hiring panel, thus disputing the material facts asserted by the defendant. The defendant's statement of material facts

describes the qualifications and interview process surrounding the supervisor position, and demonstrates that by the plaintiff's own admission, she agreed that she should not be awarded the position if she were ranked lower than other applicants interviewed and that she was in fact ranked lower by the interviewers than other candidates. Further, the defendant states the reason that the plaintiff was granted an interview in the first place was because her written application was unclear, a concession that was "more than she was entitled to."

In her second amended complaint, to demonstrate that she was objectively qualified for the supervisor position, the plaintiff states that she had an associates degree in mechanics, unlike other "new members." But in her statement of material facts in opposition to defendant's motion for summary judgment, the plaintiff elaborates on her qualifications by disputing the defendant's characterization of her experience, the fact that she was interviewed for the supervisor position, and the fact that the interview process was impartial. The plaintiff contends that she was fully qualified for the supervisor position and had performed "some of" (as opposed to "only a small part of") the duties of that position. Plaintiff contends that "scheduling pool rentals for cars...is similar to maintenance scheduling," one of the duties of a supervisor. Plaintiff further asserts that she was not interviewed for the supervisor position, but was granted a meeting to determine her qualifications, of which MDOT should have been aware given her eight years of employment there. Plaintiff also contends that one of the interview panel members, Barry Marston, was biased against her, and thereby infected the whole hiring process.

It seems unclear from the plaintiff's statements of material facts why the plaintiff would have been ranked by the interviewing panel if she were not in fact interviewed, as the plaintiff contends. The plaintiff further admits that she was ranked below other

applicants by the interviewing panel, again, an odd admission if she were not in fact interviewed, as she contends. But these issues do not address whether or not she has shown that she was objectively qualified for the job. She claims that she had the requisite experience and cites some specific instances where she performed supervisor level tasks (she had "performed some of the functions of assistant supervisor,") but also disputes the job description propounded by the defendant.

With regard to the plaintiff's showing a connection between her being denied the promotion and her having brought previous charges of harassment, the plaintiff fails to provide facts to bolster this assertion. Plaintiff states that the defendant failed to provide her with the requisite documentation necessary to respond to her second complaint to the MHRC. Without such documentation, plaintiff implies that she was unable to successfully make out a second complaint to the MHRC. But with regard to being denied the promotion, plaintiff relies upon the process' being biased, as Barry Marston was involved. Presumably his bias against her stems from his being one of her supervisors during the period in which the harassment took place, but this link is not expressly made by the plaintiff in any of her Statements of Material Facts. Plaintiff further contends that the hiring process was flawed because the results of a written test were discarded for all applicants. Plaintiff contends that she scored 100 percent on the test, but the defendant contends that all applicants did so poorly on the test that its use was discarded as part of the application process.

In sum, it would not appear that the plaintiff has made out a *prima facie* case of retaliation or sex discrimination in denying her the supervisor's position. Accordingly, the principles of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) do not apply.

The plaintiff highlights the fact that MDOT admitted in the Agreement that she had been subjected to unlawful employment discrimination because of her sex. *See*

Agreement ¶ 1. In her view, this underlying fact sets the stage for the subsequent inequities of which she complains. In addition, she criticizes the defendant's suggestion that it can simply ignore everything that transpired prior to settling the first MHRC complaint. Moreover, the plaintiff asserts that she has indeed properly stated a hostile work environment claim by showing that: (1) she is a member of a protected class; (2) she was subjected to unwelcome harassment; (3) the harassment was based upon her protected category; (4) the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) the conduct was objectively and subjectively offensive; and (6) a basis exists to impute liability to the employer. *See Crowley*, 303 F.3d at 395; *O'Rourke*, 235 F.3d at 728.

Frost contends that her supervisors as well as her co-workers created the hostile working environment, and thus liability should be imputed to MDOT. In particular, she asserts that MDOT supervisors knew, or should have known of the harassment by co-workers, yet failed on numerous occasions to take preventative measures. Frost also claims that in some instances her supervisors even condoned and participated in the harassment.

The plaintiff also derides MDOT's anti-discrimination policy as inadequate and ineffective. There appears to be some evidence to indicate that the defendant did not follow its own policies in terms of notice and education of its employees regarding anti-discrimination policy. She also claims that the defendant failed to take reasonable care to prevent her from being harassed following the execution of the Settlement Agreement. Clearly there are genuine issues of material fact to be decided regarding the truth of this assertion. Reasonableness is an objective standard to be ascertained by a factfinder. In addition, she believes her claims of retaliation are legally sufficient in that the record evidence shows (1) she was improperly delayed in returning to her job

as a heavy equipment mechanic following a shoulder injury and (2) that her co-workers were permitted to continue engaging in harassment.

According to 5 M.R.S.A. § 4613(2)(B)(8)(g) the plaintiff is entitled to request a jury trial if she seeks compensatory and punitive damages. Because such damages are implicated in a jury trial, a plaintiff must first have complained to the MHRC as described in 5 M.R.S.A. § 4622 *supra*. Defendant asserts that the post-Settlement Agreement complaint to the MHRC did not contain all elements embodied in the counts of her second amended complaint. As such, Frost should not be entitled to a jury trial.

Frost's second complaint to the MHRC alleged that she was "being unlawfully discriminated against in employment because of [her] sex and in retaliation for filing a charge of discrimination against [her] employer in which [she] alleged sex discrimination." The second MHRC complaint described "numerous complaints to Barry Marston regarding harassment against [Frost] by [her] co-workers" including lack of informing Frost of findings made by the handwriting expert hired to evaluate the "I love you" notes and the series of rock incidents from July-November, 2000. *See id.*

Under the rubric of exhausting all administrative remedies and not explicitly regarding a jury trial, the plaintiff rebuts the defendant's assertion that she is barred from having the court consider claims that she did not explicitly raise in front of the MHRC. She states that MHRC procedural rules require only that she briefly set forth the facts and circumstances surrounding the alleged discrimination. Frost further contends that the court should evaluate whether or not she has exhausted her administrative remedies according to the "scope of the investigation test" described in *Chaloult v. Interstate Brands Corp.*, 2003 U.S. Dist. LEXIS 13602 at *69-70 (D. Me. 2003). In employment cases involving charges of retaliation, the First Circuit has indicated that "retaliation claims are preserved so long as the retaliation is reasonably related to and

defendant took reasonable steps to comply with the law and whether plaintiff can meet her burden of establishing to the contrary, are issues for the jury.

For reasons stated herein, the entry will be:

Defendant's first motion for partial summary judgment is DENIED; plaintiff's motion for summary judgment on count V of her second amended complaint is DENIED; defendant's second motion for summary judgment with regard to count I of the second amended complaint is DENIED; defendant's second motion for summary judgment regarding count II of plaintiff's second amended complaint is DENIED; defendant's second motion for summary judgment regarding count III of plaintiff's second amended complaint is GRANTED; defendant's second motion for summary judgment regarding count IV of plaintiff's second amended complaint is GRANTED.

Dated: October 7, 2005

Donald H. Marden
Justice, Superior Court

WANITA FROST   - PLAINTIFF
19 DUNN STREET
WEST GARDINER ME 04345
Attorney for: WANITA FROST
JEFFREY YOUNG   - RETAINED 11/13/2002
MCTEAGUE HIGBEE CASE COHEN ET AL
FOUR UNION PARK
PO BOX 5000
TOPSHAM ME 04086-5000

vs
STATE OF MAINE DEPT OF TRANSPORTATION - DEFENDANT
26 STATE HOUSE STATION
AUGUSTA ME 04333
Attorney for: STATE OF MAINE DEPT OF TRANSPORTATION
ERIC WRIGHT   - RETAINED
MAINE DEPARTMENT OF TRANSPORTATION
16 STATE HOUSE STATION
AUGUSTA ME 04333-0016

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2002-00237

**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: CONSTITUTIONAL/CIVIL RIGHTS
Filing Date: 11/13/2002

## Docket Events:

11/13/2002 FILING DOCUMENT - COMPLAINT FILED ON 11/13/2002
           ATTACHED EXHIBITS A,B,C

11/13/2002 Party(s):  WANITA FROST
           ATTORNEY - RETAINED ENTERED ON 11/13/2002
           Plaintiff's Attorney: JEFFREY YOUNG

11/13/2002 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 11/13/2002
           Plaintiff's Attorney:  JEFFREY YOUNG
           MAILED TO ATTY. OF RECORD.

01/23/2003 Party(s):  WANITA FROST
           SUPPLEMENTAL FILING - AMENDED COMPLAINT FILED ON 01/23/2003
           Plaintiff's Attorney:  JEFFREY YOUNG
           FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL, FILED.

02/04/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
           SUMMONS/SERVICE - CIVIL SUMMONS FILED ON 02/03/2003

02/04/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
           SUMMONS/SERVICE - CIVIL SUMMONS SERVED ON 01/29/2003
           ORIGINAL SUMMONS WITH RETURN SERVICE MADE UPON STATE OF MAINE, DEPARTMENT OF
           TRANSPORTATION.

02/19/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
           OTHER FILING - ENTRY OF APPEARANCE FILED ON 02/19/2003
           Defendant's Attorney: ERIC WRIGHT

02/19/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
           ATTORNEY - RETAINED ENTERED ON 02/19/2003

Defendant's Attorney: ERIC WRIGHT

02/19/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
RESPONSIVE PLEADING - ANSWER FILED ON 02/19/2003
Defendant's Attorney: ERIC WRIGHT

02/24/2003 ORDER - SCHEDULING ORDER ENTERED ON 02/24/2003
S KIRK STUDSTRUP , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL

02/24/2003 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 10/24/2003
Defendant Not Present in Court

02/24/2003 ASSIGNMENT - SINGLE JUDGE/JUSTICE ASSIGNED TO JUSTICE ON 02/24/2003
DONALD H MARDEN , JUSTICE

03/03/2003 Party(s):  WANITA FROST
JURY FILING - DEMAND FOR JURY TRIAL FILED ON 03/03/2003
Plaintiff's Attorney:  JEFFREY YOUNG
$300.00 JURY TRIAL FEE PAID BY PLAINTIFF, FILED.

04/24/2003 Party(s):  WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 04/24/2003
Plaintiff's Attorney:  JEFFREY YOUNG
PLAINTIFF'S FIRST SET OF INTERROGATORIES TO DEFENDANT AND PLAINTIFF'S FIRST REQUEST FOR
PRODUCTION OF DOCUMENTS TO DEFENDANT SERVED ON ERIC E. WRIGHT,ESQ. ON 4/23/04.

05/22/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 05/22/2003
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S RESPONSES TO PLAINTIFF WANITA FROST'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS ALONG WITH ANSWERS AND OBJECTIONS TO PLAITNIFF WANITA FROST'S FIRST SET OF
INTERROGATORIES SERVED ON JEFFREY NEIL, ESQ. ON 5/21/03, FILED.

05/30/2003 Party(s):  WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 05/30/2003
Plaintiff's Attorney:  JEFFREY YOUNG
PLAINTIFF'S EXPERT DESINNATION SERVED ON ERIC E. WRIGHT, ESQ. ON 5/27/03.

05/30/2003 Party(s):  WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 05/30/2003
Plaintiff's Attorney:  JEFFREY YOUNG
PLAINTIFF'S SUPPLEMENTAL EXPERT DESIGNATION SERVED ON ERIC E. WRIGHT, ESQ. ON 5/29/03.

06/12/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 06/09/2003
Defendant's Attorney: ERIC WRIGHT
DEFENDANT STATE OF MAINE'S FIRST SET OF INTERROGATORIES PROPOUNDED TO PLAINITIFF AND
DEFENDANT STATE OF MAINE'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS SERVED ON JEFFREY
NEIL YOUNG, ESQ. ON 6/6/03.

07/07/2003 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION

DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 07/07/2003
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S DESIGNATION OF EXPERT WITNESSES, DEFENDANT'S AMENDED ANSWERS TO PLAINTIFF'S
FIRST SET OF INTERROGATORIES AND DEFENDANT'S AMENDED RESPONSES TO PLAINTIFF'S FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS SERVED ON JEFFREY NEIL YOUNG, ESQ. ON 7/3/03.

08/12/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 08/11/2003
Plaintiff's Attorney: JEFFREY YOUNG
DISCOVERY DOCUMENTS BATES STAMPED 1-976;PLAINTIFF'S ANSWERS TO DEFENDANT'S FIRST SET OF
INTERROGATORIES' PLAINTIFF'S ANSERS TO DEFENDANT'S FIRST SET OF INTERROGATORIES AND
PLAINTIFF'S RESPONSES TO DEFENDANT'S FIRST REQUEST FORPRODUCTIN OF DOCUMENTS SERVED ON
ERIC WRIGHT ON 8/7/03.

08/12/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 08/10/2003
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S AMENDED RESPONSE TO REQUEST 3 OF DEFENDANT'S FIRST REQUEST FOR PRODUCTION OF
DOCUMENTS AND FURTHER RESPONSIVE DOCUMENTS (BATES 1499-1644) SERVED ON ERIC WRIGHT, ESQ.
ON 8/8/03.

09/23/2003 Party(s): WANITA FROST
DISCOVERY FILING - RULE 26(G) LETTER FILED ON 09/23/2003
Plaintiff's Attorney: JEFFREY YOUNG
LETTER REQUESTING DISCOVERY DISPUTE CONFERENCE, FILED.

09/24/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 09/24/2003
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S AMENDED ANSWERS TO PLAINTIFF'S INTERROGATORY AND DEFENDANT AMENDED RESPONSE TO
PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS SERVED ON JEFFREY NEIL YOUNG, ESQ. ON
9/23/03.

09/24/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 09/24/2003
Defendant's Attorney: JEFFREY YOUNG
PLAINTIFF'S NOTICE OF DEPOSITION OF BARRY MARSTON SERVED ON ERIC WRIGHT, ESQ. ON 9/23/03.

09/24/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 09/24/2003
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S AMENDED NOTICE OF DEPOSITION OF BARRY MARSTON SERVED ON ERIC WRIGHT, ESQ. ON
9/23/03.

09/26/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
LETTER - FROM PARTY FILED ON 09/25/2003
Defendant's Attorney: ERIC WRIGHT
LETTER REGARDING CONFIDENTIAL DOCUMENTS

09/26/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 09/25/2003
Defendant's Attorney: ERIC WRIGHT
LETTER OF 5/22/95 FROM M. BELL, ESQ. TO DAN ROLFE, LETTER OF 2/22/00 FROM JANE GILBERT -

PLFT., NEWSPAPER ADVERTISMENT, INFORMATION OF HV & ET, INFORMATION ON HV-ET AND PLFT.
HANDWRITEN NOTE, DATED 2/13/03 SERVED ON JEFFREY NEIL YOUNG, ESQ. ON 9/25/03.

09/29/2003 HEARING - 26(G) CONFERENCE SCHEDULED FOR 10/07/2003 @ 8:15
DONALD H MARDEN , JUSTICE
NOTICE TO PARTIES/COUNSEL

10/01/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/01/2003
Defendant's Attorney: ERIC WRIGHT
NOTICE OF DEPOSITION OF WANITA FROST SERVED ON JEFFREY NEIL YOUNG, ESQ ON 9/29/03, FILED.

10/07/2003 HEARING - 26(G) CONFERENCE HELD ON 10/07/2003 @ 8:15
DONALD H MARDEN , JUSTICE
ATTORNEY JEFFREY YOUNG AND ERIC WRIGHT PARTICIPATING IN CONFERENCE CALL. COURT TO ISSUE
ORDER.

10/07/2003 ORDER - 26(G) ORDER ENTERED ON 10/07/2003
DONALD H MARDEN , JUSTICE
PARTIES TO FILE FORM OF PROTECTIVE ORDER.                          COPIES TO
PARTIES/COUNSEL

10/08/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/08/2003
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S NOTICE OF CONTINUED DEPOSITION OF BARRY MARSTON; AND PLAINTIFF'S NOTICE OF
DEPOSITION OF DAN ROLFE SERVED ON ERIC WRIGHT, ESQ. ON 10/7/03.

10/17/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/17/2003
Defendant's Attorney: ERIC WRIGHT
PHYSICAL ABILITY REQUIRMENTS FOR AUTOMOTIVE MECHANIC, HANDWRITTEN MEMO, LETTER WITH
EMPLOYEES, HANDWRITTEN NOTES OF JOHN ROBERTS, DAN ROLFE, AND MEMORANDUM FROM WALTER
WIECZOREK SERVED ON JEFFREY NEIL YOUNG, ESQ. ON 10/14/03.

10/23/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/23/2003
Defendant's Attorney: ERIC WRIGHT
NOTICE TO TAKE ORAL DEPOSITION OF DR. LESLIE WALLEIGH SERVED ON JEFFREY NEIL YOUNG, ESQ.
ON 10/22/03.

10/24/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/24/2003
Defendant's Attorney: ERIC WRIGHT
MEMORANDUM OF PATTY CASTONGUAY, MEMORANDUM OF TAMMY ROY, NOTES OF INTERVIEW, INVESTIGATORY
REPORT, WRITTEN REPRIMAND, WRITTEN REPRIMAND, LETTER TO R.G., TYPED INTERVIEW, NOTIES OF
INTERVIEW, FURTHER NOTES OF INTERIEW, INVESTIGATION REPORT, DISCIPLINARYLETTER, TYPED
JOURNAL NOTES, HANDWRITTEN NOTIES , LETTERS FORM PATTY CASTONGUAY, GARRITY WARNING, NOTES
OF INTERVIEW, INBESTIGATIVE REPORT, LETTER, EMPLOYEE SEPARATION AND NOTES SERVED ON
JEFFREY NEIL YOUNG, ESQ. ON 10/23/03.

10/27/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/27/2003

Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S NOTICE OF DEPOSITION OF ROBERT GUYON SERVED ON ERIC WRIGHT, ESQ. ON 10/24/03, FILED.

10/30/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/30/2003
Plaintiff's Attorney: JEFFREY YOUNG
1.DR. WALLEIGH'S C.V. (BATES 1645-1646) ON 10/28/03 AND 2. NOTES FROM PETER STENBERG, LCSW (BATES 1647-1651) ON 10/29/03 SERVED ON ERIC WRIGHT, ESQ. ON 10/29/03.

10/30/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 10/30/2003
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S NOTICE OF CONTINUED DEPOSITION OF BARRY MARSTON(DAY 2) AND PLAINTIFF'S NOTICE OF CONTINUED DEPOSITION OF DAN ROLFE (DAY 2) SERVED ON ERIC WIRIGHT, ESQ. ON 10/29/03.

11/13/2003 Party(s): WANITA FROST
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 11/13/2003
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFFS' NOTICE OF 30(B)(6)DEPOSITION OF STATE OF MAINE, DEPARTMENT OF TRANSPORTATION SERVED ON ERIC WRIGHT, ESQ. ON 11/12/03.

11/21/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 11/21/2003
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S RULE 30(B0(6) DESIGNATIONS, REPORT OF EMPLOYMENT AND LEAVE, KEITH M. WHITTEN, DEFT.'S AMENDED ANSWERS TO PLAINTIFFS' 1ST SET OF INTERROGATORIES, DEFENDANT'S RESPONSE TO PLAINTIFF'S REQUEST FOR WAGE AND EMPLOYMENT RECORDS OF ONE R.G. SERVED ON JEFFREY NEIL YOUNG, ESQ. ON 11/18 & 20,2003.

11/21/2003 ORDER - COURT ORDER ENTERED ON 11/21/2003
DONALD H MARDEN , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT. COPIES TO PARTIES/COUNSEL                                    (PROTECTIVE ORDER)

11/21/2003 DISCOVERY FILING - DISCOVERY DEADLINE ENTERED ON 12/31/2003

12/09/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 12/09/2003
Defendant's Attorney: ERIC WRIGHT
PERSONNEL FILE, GRIEVANCE FIL,TERMINATION FILE, TWO-WEEK SUSPENSION, INVESTIGATION FILE OF PATTY CASTONGUAY, PAYROLL RECORD AND COMPLAINT OF PLAINTIFF SERVED ON JEFFREY NEIL YOUNG, ESQ. ON 12/5/03.

12/12/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTICE OF DEPOSITION FILED ON 12/11/2003
Defendant's Attorney: ERIC WRIGHT
NOTICE TO TAKE ORAL DEPOSITION OF PETER STENBERG SERVED ON JEFFREY NEIL YOUNG,ESQ. ON 12/9/03.

12/16/2003 Party(s): WANITA FROST
MOTION - MOTION FOR LEAVE FILED ON 12/16/2003
Plaintiff's Attorney: JEFFREY YOUNG

PLAINTIFF'S MOTION AND INTEGRATED MEMORANDUM OF LAW FOR LEAVE TO FILE SECOND AMENDED
COMPLAINT AND REQUEST FOR HEARING, FILED.

12/16/2003 Party(s): WANITA FROST
SUPPLEMENTAL FILING - AMENDED COMPLAINT FILED ON 12/16/2003
Plaintiff's Attorney: JEFFREY YOUNG
SECOND AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL, FILED.
                                                    2/18/04 "EXHIBIT B" REPLACED.

12/18/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTICE OF DEPOSITION FILED ON 12/16/2003
Defendant's Attorney: ERIC WRIGHT
NOTICE OF DEPOSITION FO LESLIE WALLEIGH, M.D. SERVED ON JEFFREY NEIL YOUNG, ESQ. ON
12/12/03.

12/19/2003 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 12/18/2003
Defendant's Attorney: ERIC WRIGHT
PERSONEL FILE, DISCIPLINARY FILE AND JOURNAL NOTES FROMDAN ROLFE SERVED ON JEFFREY NEIL
YOUNG, ES. ON 12/12/03.

01/06/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
OTHER FILING - OPPOSING MEMORANDUM FILED ON 01/06/2004
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND HER AMENDED COMPLAINTWITH ATTACHED
EXHIBITS A AND B.

01/13/2004 TRIAL - TRAILING LIST NOTICE SENT ON 01/09/2004

01/16/2004 Party(s): WANITA FROST
OTHER FILING - REPLY MEMORANDUM FILED ON 01/16/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO AMEND COMPLAINT,
FILED.

01/27/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION TO CONTINUE FILED ON 01/26/2004
Defendant's Attorney: ERIC WRIGHT
MOTION TO CONTINUE (TO BE DEALTH WITH AT TMC)

02/02/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION TO CONTINUE GRANTED ON 01/30/2004
DONALD H MARDEN , JUSTICE
MOTION GRANTED; COUNSEL WILL FILE AMENDED SCHEDULING ORDER. COPIES MAILED TO ATTYS.

02/02/2004 Party(s): WANITA FROST
MOTION - MOTION FOR LEAVE GRANTED ON 01/30/2004
DONALD H MARDEN , JUSTICE
DEFENDANT OBJECTION WITHDRAWN. MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT GRANTED.
 COPIES MAILED TO ATTYS.

02/05/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
RESPONSIVE PLEADING - ANSWER TO AMENDED PLEADING FILED ON 02/05/2004

Defendant's Attorney: ERIC WRIGHT
ANSWER OF DEFENDANT TO PLAINTIFF'S SECOND AMENDED COMPLAINT, FILED.

02/24/2004 ORDER - SCHEDULING ORDER AMENDED ON 02/19/2004
DONALD H MARDEN , JUSTICE

03/09/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION PARTIAL SUMMARY JUDG FILED ON 03/09/2004
Defendant's Attorney: ERIC WRIGHT
STATEMENT OF MATERIAL FACTS IN SUPPORT OF DEFENDNT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT,REQUEST FOR HEARING ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PROPOSED
ORDER.

03/09/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - OTHER MOTION FILED ON 03/09/2004
Defendant's Attorney: ERIC WRIGHT
MOTION FOR FILING DOCUMENTS UNDER SEAL                                    (RECORD IN
VAULT ON BACK SHELF)

03/11/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 03/11/2004
Defendant's Attorney: ERIC WRIGHT
PAPERS 1 AND 2 SERVED ON JEFFREY NEIL YOUNG, ESQ. ON 3/9/04.

03/17/2004 TRIAL - TRAILING LIST CONTINUED ON 03/17/2004
CONTINUED IN LIGHT OF PENDING MOTIONS

03/18/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
LETTER - FROM PARTY FILED ON 03/18/2004
Defendant's Attorney: ERIC WRIGHT
LETTER INDICATING A TYPOGRAPHICAL ERROR ON PAGE 7, FILED.

03/24/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - OTHER MOTION GRANTED ON 03/22/2004
DONALD H MARDEN , JUSTICE
MOTION FOR FILING DOCUMENTS UNDER SEAL                                    (RECORD IN
VAULT ON BACK SHELF)

03/24/2004 ORDER - COURT ORDER ENTERED ON 03/22/2004
DONALD H MARDEN , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL
                                                  (ORDER ON CONFIDENTIAL DOCUMENTS)

03/25/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 03/25/2004
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S MOTION FOR ENLARGEMENT OF TIME, FILED.

03/31/2004 Party(s): WANITA FROST
MOTION - MOTION TO CONTINUE FILED ON 03/30/2004
Plaintiff's Attorney:  JEFFREY YOUNG
ASSENTED TO MOTION TO CONTINUE, FILED.

04/02/2004 Party(s):  WANITA FROST
          MOTION - MOTION TO CONTINUE GRANTED ON 03/31/2004
          DONALD H MARDEN , JUSTICE
          COPIES TO PARTIES/COUNSEL


04/02/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 03/26/2004
          DONALD H MARDEN , JUSTICE
          COPIES TO PARTIES/COUNSEL                                    TIME EXTENDED
          TO 4/7/04.


04/06/2004 Party(s):  WANITA FROST
          MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 04/05/2004
          Plaintiff's Attorney:  JEFFREY YOUNG
          PLAINTIFF'S ASSENTED TO MOTION FOR ENLARGEMENT OF TIME AND REQUEST REGARDING SCHEDULING OF
          ORAL ARGUMENT, FILED.
                                              4/6/04 COURT REQUIRES PLTF. TO FILE PROPOSED
          ORDER.


04/08/2004 Party(s):  WANITA FROST
          MOTION - MOTION PARTIAL SUMMARY JUDG FILED WITH AFFIDAVIT ON 04/07/2004
          Plaintiff's Attorney:  JEFFREY YOUNG
          PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, PLAINTIFF'S STATEMENT OF MATERIAL FACTS
          NOT IN DISPUTE IN SUPPORT OF PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AFFIDAVIT OF
          JEFFREY NEIL YOUNG IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT, AFFIDAVIT OF WANITA
          FROST (UNSIGNED) (FILED UNDER SEAL) REQUEST FOR HEARING, INDEX TO RECORD CITATIONS AND
          PROPOSED ORDER, FILED.
             CERTAIN DOCUMENTS REPLACED ON 4/8/04.


04/09/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
          MOTION - MOTION FOR LEAVE FILED ON 04/08/2004
          Plaintiff's Attorney:  ERIC WRIGHT
          MOTION TO  PERMIT LATE FILING OF MOTION FOR SUMMARY JUDGMENT AND PROPOSED ORDER, FILED.


04/09/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
          MOTION - MOTION SUMMARY JUDGMENT FILED ON 04/08/2004
          Defendant's Attorney: ERIC WRIGHT
          DEFENDANT'S MOTION FOR SUMMARY JUDGMENT WITH INCORPORATED MEMORANDUM OF LAW, STATEMENT OF
          MATERIAL FACTS IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, REQUEST FOR HEARING AND PROPOSED
          ORDER, FILED.


04/12/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
          MOTION - MOTION FOR LEAVE GRANTED ON 04/09/2004
          DONALD H MARDEN , JUSTICE
          GRANTED; TO FILE DAY AFTER PRESENT DUE DATE.  COPIES MAILED TO ATTYS.


04/16/2004 Party(s):  WANITA FROST
          MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 04/13/2004
          DONALD H MARDEN , JUSTICE
          COPIES TO PARTIES/COUNSEL                                   HEARING ON THE
          VARIOUS SUMMARY JUDGMENTS MOTIONS WILL NOT BE SCHEDULED UNTIL FTER BRIEFING HAS BEEN
          COMPLETED ON THE VARIOUS MOTIONS.

04/22/2004 Party(s): WANITA FROST
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 04/22/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S ASSENTED TO MOTION FOR FURTHER ENLARGEMENT OF TIME WITH PROPOSED ORDER, FILED.

04/23/2004 Party(s): WANITA FROST
MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 04/23/2004
DONALD H MARDEN , JUSTICE
PLAINTIFF'S ASSENTED TO MOTION FOR ENLARGEMENT OF TIME IS HEREBY GRANTED.  COPIES ISSUED
TO COUNSEL OF RECORD.

04/27/2004 Party(s): WANITA FROST
OTHER FILING - OPPOSING MEMORANDUM FILED ON 04/26/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S OPPOSITION  TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT ON 4/28/04 A
NEW PAGE 14 OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT, FILED.
S/J. YOUNG, ESQ.                              11/1/04   LETTER AS A SUPPLEMENT TO
PLAINTIFF'S OPPOSITION TO DEFENDANT MOITON FOR SUMMARY JUDGMENT DATED APRIL 26, 2004,
FILED.  S/J. YOUNG, ESQ.

04/27/2004 Party(s): WANITA FROST
OTHER FILING - REPLY MEMORANDUM FILED ON 04/26/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S REPLY TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND STATEMENT OF MATERIAL
FACTS IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT.  CERTIFICATE OF SERVICE.                2 LARGE BLACK NOTEBOOKS IN VAULT.

04/27/2004 Party(s): WANITA FROST
OTHER FILING - AFFIDAVIT FILED ON 04/26/2004
SECOND AFFIDAVIT OF WANITA FROST AND SECOND AFFIDAVIT OF JEFFREY NEIL YOUNG.

04/30/2004 Party(s): WANITA FROST
OTHER FILING - OTHER DOCUMENT FILED ON 04/30/2004
Plaintiff's Attorney: JEFFREY YOUNG
CORRECTED PAGE 8 TO BE SUBSTITUTED.

05/03/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
OTHER FILING - OPPOSING MEMORANDUM FILED ON 05/03/2004
Plaintiff's Attorney: ERIC WRIGHT
DEFENDANTS MEMORANDUM OPPOSING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT
V,DEFENDANT'S OPPOSING STATEMENT OF MATERIAL FACTS, PROPOSED ORDER,PROPOSED ORDER AND
REQUEST FOR HEARING ON DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIL SUMMARY
JUDGMENT (COUNT V)  NOTEBOOK-RECORD CITATIONS IN SUPPORT OF SEPARATE STATEMENT OF
ADDITIONAL MATERIAL FACTS AND DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY
JUDGMENT ON COUNT V

05/06/2004 Party(s): WANITA FROST,STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 05/06/2004
Defendant's Attorney: ERIC WRIGHT
Plaintiff's Attorney: JEFFREY YOUNG

05/06/2004 Party(s): WANITA FROST

MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 05/06/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINIFF'S ASSENTED TO MOTION FOR ENLARGEMENT OF TIME AND CERTIFICATE OF SERVICE.

05/07/2004 Party(s): WANITA FROST
MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 05/06/2004
S KIRK STUDSTRUP , JUSTICE
COPIES TO PARTIES/COUNSEL                                          TIME EXTENDED
TO JUNE 14, 2004.

05/12/2004 Party(s): WANITA FROST
OTHER FILING - AFFIDAVIT FILED ON 05/11/2004
S/WANITE FROST

05/24/2004 Party(s): WANITA FROST
MOTION - MOTION TO COMPEL FILED WITH AFFIDAVIT ON 05/21/2004
Plaintiff's Attorney: ERIC WRIGHT
DEFENDANT'S MOTION TO COMPEL AFFIDAVIT FROM MICHAEL A BELL, ESQ.,DEFENDANT'S MEMORANDUM IN
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY
JUDGMENT,DEFENDANT'S, DEFENDANT'S REPLY STATEMENT OF MATERIAL FACTS AND RECORD CITATIONS
IN SUPPORT OF DEFENDANT'S REPLY STATEMENT OF MATERIAL FACTS ( IN NOTEBOOK IN VAULT)

05/24/2004 Party(s): WANITA FROST
MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 05/24/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S ASSENTED TO MOTION FOR FURTHER ENLARGEMENT OF TIME WITH PROPOSED ORDER, FILED.

06/01/2004 Party(s): WANITA FROST
OTHER FILING - OPPOSING MEMORANDUM FILED ON 05/28/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON COUNTSI-IV OF
PLAINTIFF'S SECOND AMENDED COMPLAINT

06/01/2004 Party(s): WANITA FROST
MOTION - MOTION TO STRIKE FILED WITH AFFIDAVIT ON 05/28/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLFT.'S MTN.TO STRIKE DEFT'S STATEMENT OF MATERIAL FACTS, PLFT.'S RESPONSE TO DEFT.S
STATEMENT OF MATERIAL FACTS, AND PLFT.S STATEMENT OF MATERIAL FACTS IN OPPOSITION TO
DEFENDNAT'S MOTION FOR SUMMARY JUDGMENT, THIRD AFFIDAVIT OF WANITA FROST AND AFFIDAVIT OF
RONALD BRANN AND PLAINTIFF'S INDEX TO RECORD CITATIONS WITH ATTACHED DOCUMENTS 1A,2B 3C, 4
AND 5   CERTIFICATE OF SERVICE.   SIGNED THIRD AFFIDAVIT OF WANITA FROST FILED ON 6/9/04.

06/03/2004 Party(s): WANITA FROST
MOTION - MOTION FOR ENLARGEMENT OF TIME GRANTED ON 06/02/2004
DONALD H MARDEN , JUSTICE
COPIES TO PARTIES/COUNSEL                                          TIME ENLARGED
TO 5/28/04.

06/07/2004 HEARING - MOTION SUMMARY JUDGMENT SCHEDULED FOR 06/18/2004 @ 2:30
DONALD H MARDEN , JUSTICE

06/07/2004 HEARING - MOTION TO STRIKE SCHEDULED FOR 06/18/2004 @ 2:30
DONALD H MARDEN , JUSTICE

06/07/2004 HEARING - MOTION PARTIAL SUMMARY JUDG SCHEDULED FOR 06/18/2004 @ 2:30
            DONALD H MARDEN , JUSTICE

06/14/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
            OTHER FILING - REPLY MEMORANDUM FILED ON 06/11/2004
            Defendant's Attorney: ERIC WRIGHT
            DEFENDANTS REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ON
            COUNTS I-IV AND RECORD CITATIONS IN SUPPORT OF SEPARATE STATEMENT OF ADDITIONAL MATERIAL
            FACTS.

06/14/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
            OTHER FILING - REPLY MEMORANDUM FILED ON 06/11/2004
            Defendant's Attorney: ERIC WRIGHT
            DEFENDANT'S REPLY MEMORANDUM TO PLAINTIF'S OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY
            JUDGMENT  (COUNT I-IV)

06/14/2004 Party(s):  WANITA FROST
            MOTION - MOTION TO CONTINUE FILED ON 06/14/2004
            Plaintiff's Attorney:  JEFFREY YOUNG
            PLAINTIFF'S MOTION TO CONTINUE HEARING AND PROPOSED ORDER.

06/14/2004 Party(s):  WANITA FROST
            OTHER FILING - REPLY MEMORANDUM FILED ON 06/14/2004
            Plaintiff's Attorney:  JEFFREY YOUNG
            PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION FOR PARITAL SUMMARY
            JUDGMENT ON COUNT V

06/14/2004 Party(s):  WANITA FROST
            OTHER FILING - REPLY MEMORANDUM FILED ON 06/14/2004
            Plaintiff's Attorney:  JEFFREY YOUNG
            PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSING STATEMENT OF MATERIAL FACTS AND RESPONSE TO
            DEENDANT'S STATEMENT OF ADDIITIONAL FACTS WITH FOURTH AFFIDAVIT OF WANTIA FROST
            (UNSIGNED),AFFIDAVIT OF DORORTHY MCPHERSON (UNSIGNED),  FORT AFFFIDAVIT OF JEFFREY NEIL
            YOUNG WITH ATTACHED EXHIBIT 1 AND CERTIFICATE OF SERVICE.

06/15/2004 Party(s):  WANITA FROST
            MOTION - MOTION TO CONTINUE GRANTED ON 06/15/2004
            DONALD H MARDEN , JUSTICE
            COPIES TO PARTIES/COUNSEL

06/17/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
            MOTION - MOTION TO STRIKE FILED ON 06/16/2004
            Defendant's Attorney: ERIC WRIGHT
            DEFENDANT'S MOTION TO STRIKE AFFIDAVITS, WITH INCORPORATED MEMORANDUM OF LAW, FILED.

06/17/2004 HEARING - MOTION PARTIAL SUMMARY JUDG CONTINUED ON 06/15/2004
            DONALD H MARDEN , JUSTICE

06/17/2004 HEARING - MOTION TO STRIKE CONTINUED ON 06/15/2004
            DONALD H MARDEN , JUSTICE

06/17/2004 HEARING - MOTION SUMMARY JUDGMENT CONTINUED ON 06/15/2004

DONALD H MARDEN , JUSTICE

06/17/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
OTHER FILING - OTHER DOCUMENT FILED ON 06/17/2004
Defendant's Attorney: ERIC WRIGHT
CITE FROM U.S. DISTRICT COURT, FILED. (WAS NOT ATTACHED WITH DEFENDANT'S MOTION TO
STRIKE)

06/21/2004 Party(s): WANITA FROST
OTHER FILING - AFFIDAVIT FILED ON 06/21/2004
Plaintiff's Attorney: JEFFREY YOUNG
FOURTH AFFIDAVIT OF WANITA FROST AND AFFIDAVIT OF DOROTHY MCPHERSON, FILED.

06/23/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
OTHER FILING - OPPOSING MEMORANDUM FILED ON 06/23/2004
Defendant's Attorney: ERIC WRIGHT
DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S STATEMENT OF MATERIAL
FACTS, FILED.

07/07/2004 Party(s): WANITA FROST
OTHER FILING - REPLY MEMORANDUM FILED ON 07/06/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S REPLY TO DEFENDANT'S OPPOSITION TO PLAINTIFF'S MOTION TO STRIKE DEFENDANT'S
STATEMENT OF MATERIAL FACTS, FILED.

07/07/2004 Party(s): WANITA FROST
OTHER FILING - OPPOSING MEMORANDUM FILED ON 07/07/2004
Plaintiff's Attorney: JEFFREY YOUNG
PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO STRIKE AFFIDAVITS, WITH INCORPORATED
MEMORANDUM OF LAW, FILED.
                                        7/12/04  EXHIBITS A AND B FILED

07/14/2004 Party(s): STATE OF MAINE DEPT OF TRANSPORTATION
LETTER - FROM PARTY FILED ON 07/14/2004
Defendant's Attorney: ERIC WRIGHT
LETTER INDICATING ALL THE PAPERWORK HAS BEEN FILED BY BOTH PARTIES AND CASE IS IN ORDER
FOR HEARING, FILED.

10/07/2004 Party(s): WANITA FROST,STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION FOR ENLARGEMENT OF TIME MOOT ON 10/07/2004

10/07/2004 HEARING - MOTION SUMMARY JUDGMENT SCHEDULED FOR 11/02/2004 @ 3:00

10/07/2004 HEARING - MOTION PARTIAL SUMMARY JUDG SCHEDULED FOR 11/02/2004 @ 3:00

11/03/2004 HEARING - MOTION PARTIAL SUMMARY JUDG HELD ON 11/02/2004
DONALD H MARDEN , JUSTICE
Defendant's Attorney: ERIC WRIGHT
Plaintiff's Attorney: JEFFREY YOUNG
ORAL ARGUMENTS MADE TO THE COURT

11/03/2004 HEARING - MOTION SUMMARY JUDGMENT HELD ON 11/02/2004
DONALD H MARDEN , JUSTICE

Defendant's Attorney: ERIC WRIGHT
Plaintiff's Attorney:  JEFFREY YOUNG
ORAL ARGUMENTS MADE TO THE COURT

11/03/2004 Party(s):  STATE OF MAINE DEPT OF TRANSPORTATION
MOTION - MOTION TO STRIKE UNDER ADVISEMENT ON 11/02/2004
DONALD H MARDEN , JUSTICE

10/11/2005 FINDING - JUDGMENT DETERMINATION ENTERED ON 10/07/2005
DONALD H MARDEN , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL                                    DEFENDANT'S FIRST MOTION
FOR PARITAL SUMMARY JUDGMENT IS DENIED;PLAINTIFF'SMOTION FOR SUMMARY JUDGMENT ON COUNT V
OF HER SECONDAMENDED COMPLAINT IF DENIED;DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT
WITH REGARD TO COUNT I OF THE SECOND AMENDED COMPLAINT IS DENIED; DEFENDANT'S SECOND
MOTION FOR SUMMARY JUDGMENT REGARDING COUNT II OF PLAINTIFF'S

ORDER - SUMMARY JUDGMENT ENTERED ON 10/07/2005
DONALD H MARDEN , JUSTICE
ORDERED INCORPORATED BY REFERENCE AT THE SPECIFIC DIRECTION OF THE COURT.  COPIES TO
PARTIES/COUNSEL                                    DEFENDANT'S FIRST MOTION
FOR PARITAL SUMMARY JUDGMENT IS DENIED;PLAINTIFF'SMOTION FOR SUMMARY JUDGMENT ON COUNT V
OF HER SECONDAMENDED COMPLAINT IF DENIED;DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGMENT
WITH REGARD TO COUNT I OF THE SECOND AMENDED COMPLAINT IS DENIED; DEFENDANT'S SECOND
MOTION FOR SUMMARY JUDGMENT REGARDING COUNT II OF PLAINTIFF'S  SECOND AMENDED COMPLAINT IS
DENIED; DEFENDANT'S SECOND MOTION FOR SUMMARY JUDGEMENT REGARDING COUNT III OF PLAINTIFF'S
SECOND AMENDED COMPLAINT IS GRANTED; DEFENDANT SECOND MOTION FOR SUMMARY JUDGMENT
REGARDING COUNT IV OF PLAINTIFF'S SECOND AMENDED COMPLAINT IS GRANTED.

10/11/2005 ORDER - SUMMARY JUDGMENT COPY TO REPOSITORIES ON 10/11/2005
COPIES MAILED TO DEBORAH FIRESTONE, DONALD GOSS, AND GARBRECHT LAW LIBRARY

A TRUE COPY
ATTEST:  _____
                        Clerk